**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Chambers of**<br>**Michael A. Hammer**<br>**United States Magistrate Judge** | Martin Luther King Federal Building<br>& U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07101<br>(973) 776-7858 |

June 16, 2015

To: All counsel of record

**LETTER OPINION & ORDER**

  RE: **Gold Group Enterprises, Inc. v. James Bull**
     **Civil Action No. 14-7410 (ES)(MAH)**

Dear Counsel:

  This Letter Opinion and Order will address Petitioner Gold Group Enterprises, Inc. d/b/a Gold Mobile's ("Gold Mobile") motion to quash [D.E. 2] portions of a subpoena that Respondent, James Bull, has issued to it in connection with Bull v. US Coachways, Inc., Civ. No. 14-5789, pending in the United States District Court for the Northern District of Illinois. The Court has considered the papers submitted in support of, and in opposition to, the motion to quash. Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument. For the reasons stated below, the Court grants in part and denies in part Petitioner's application.

  **I.**  **Background**

  Respondent James Bull is the plaintiff in Bull v. US Coachways, Inc., Civ. No. 14-5789 (N.D. Ill.), a putative class-action lawsuit. The complaint in that matter alleges that US Coachways, Inc. violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq., when it sent unauthorized text messages, also known as SMS messages, to consumers. See Complaint, Ex. B. to Declaration of Scott S. Christie, Esq. ("Christie Decl."), D.E. 2-2, at 1-2.

For example, the complaint alleges that on December 16, 2013, Respondent received a text message that stated as follows:

> Happy Holidays from US Coachways: For holiday party rentals of buses, limos & mini-buses call 800-359-5991. Text HELP for help, STOP to end. Msg&DataRatesMayAply [sic]."

Id. at ¶¶ 13-14. The complaint further alleges that Respondent received additional unsolicited advertisements from US Coachways via text message on January 28, 2014, March 5, 2014, and April 15, 2014. Id. at ¶¶ 15-20. The complaint contends that recipients of such unsolicited messages often had "to pay their cell phone service providers for the receipt of such spam . . . ." Id. at 1-2. As of the filing of this motion, no class had been certified. See Copy of Docket in Civ. No. 14-5789 (N.D. Ill.), Ex. C to Christie Decl., D.E. 202.

Petitioner Gold Mobile is not a party to the litigation. According to Gold Mobile's Executive Vice President, Gold Mobile

> provid[es] various technological platforms and services that allow companies to engage consumers and promote their businesses to existing and prospective customers. Gold Mobile's platforms and services include various mobile engagement programs. As part of Gold Mobile's services, Gold Mobile sends promotional e-mails and texts at the request of its clients, and facilitates other forms of communication between its clients and those clients' existing and prospective customers.

Declaration of Jeffrey R. Allen ("Allen Decl."), D.E. 2-3, ¶ 2. Gold Mobile's customers include US Coachways. Id. at ¶ 3.

Respondent served a subpoena on Petitioner on or about October 15, 2014. Id. at ¶ 4; Subpoena, Ex. A to Christie Decl. ("Subpoena"), D.E. 2-2. The subpoena contains six separate requests. Most pertinent here is Request No. 1 (the "Request"), which seeks the following:

> All data concerning any text messages sent where the purpose of such call included development of business for US Coachways, Inc. A full response to include at least the following: the target list, call detail records and a copy of the text message sent.

Subpoena at 4.

## II.     Overview of the Parties' Arguments

Petitioner objects to the Request for three reasons.  First, Petitioner argues that the Request is so broad as to be unduly burdensome.  Petitioner avers that the Request neither specifies a timeframe, nor defines "data."  Therefore, Petitioner claims, compliance would require it "to produce personal information for approximately 137,000 individuals and millions of text messages."  Allen Decl. at ¶ 6.  That, in turn, would require Gold Mobile "to dedicate one of its three developers to the task of reviewing and segregating data and records from archives dating back to 2010.  Such a reallocation of scarce company resources would reduce productivity by 33% and negatively impact the company's ability to satisfy existing obligations to its customers."  Id.

Second, Petitioner contends that "all data" as used in the Request seeks the production of its confidential and proprietary business information, including how Gold Mobile sends messages to its clients' customers.  Id. at ¶¶ 8-9.  Petitioner avers that its competitors do not know the "precise means and methods" by which Petitioner transmits the messages, and that Petitioner has "taken appropriate steps" to protect this information.  Id. at ¶ 9.  Petitioner claims that requiring it to divulge this information would cause Petitioner to suffer "serious commercial injury and a significant competitive disadvantage."  Id.

Finally, Petitioner argues that the Request would require Petitioner to disclose the personal information of US Coachway's customers, contrary to Petitioner's internal policy against disclosing third-party information that Petitioner's clients disclose to it.  Id. at ¶ 10.  Petitioner asserts that any such disclosure would have to be Court-ordered and completed pursuant to a protective order that restricts disclosure to "Attorneys' Eyes Only."  Apparently, the protective order in the Illinois action does not provide for "Attorneys' Eyes Only" protection.  See Petitioner's Brief, D.E. 2-4, at 6.

3

Respondent contends that the discovery is necessary now because discovery in the underlying action is not bifurcated into class discovery and merits discovery. See Respondent's Brief, D.E. 4, at 8. Respondent argues that the means by which Petitioner transmits messages to its clients' customers is essential discovery because the TCPA prohibits using an "automatic telephone dialing system" to call a number that has been assigned to a cell service. Id. at 12 (quoting 47 U.S.C. § 227(b)(1)(A)(iii)). The TCPA provides:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity---
>
>   (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
>   (B) to dial such numbers.

47 U.S.C. § 227(a)(1). Therefore, Respondent asserts that the means by which Petitioner transmitted the messages for US Coachways is necessary to determine whether that means constituted an "automatic telephone dialing system" under the TCPA. See Respondent's Brief, D.E. 4, at 12.

Respondent further argues that Petitioner's call records for US Coachways are necessary to determine whether Plaintiff can satisfy the requirements for class certification under Rule 23. See id. The call records will allow Respondent to determine how many individuals Petitioner contacted for US Coachways via cellular telephone, how many of those contacted were on the National Do Not Call Registry, and therefore how many potential violations occurred for each of the two proposed classes. See id. at 13-14.

Respondent also takes issue with the "Attorneys' Eyes Only" provision on which Petitioner seeks to predicate production of materials in response to the Request. See id. at 14-15. Respondent contends that such a provision was not made a part of the protective order in the underlying litigation, and is not necessary now, because Petitioner and Respondent are not direct competitors. See id.

4

### III.    Analysis

Subpoenas served under Federal Rule of Civil Procedure 45 must meet the standards for discovery under Federal Rule of Civil Procedure 26(b)(1).  Schmulovich v. 1161 Rt. 9 LLC, Civ. No. 07-597, 2008 WL 4572537, *4 (D.N.J. Oct. 14, 2008).  Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1) also provides that "the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The purpose of discovery is to uncover facts about the claims and defenses set forth in the pleadings and thus the boundaries of relevance under Rule 26 depend upon the context of each action.  See Salamone v. Carter's Retail, Inc., Civ. No. 09-5856, 2011 WL 1458063, at *2 (D.N.J. Apr. 14, 2011); accord Hickman v. Taylor, 329 U.S. 495, 507 (1947).  The determination of relevance is within the court's discretion.  Salamone, 2011 WL 1458063, at *2.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Hickman, 329 U.S. at 507.  It allows each party to have a fair opportunity to present an effective case at trial.  Halpin v. Barnegat Bay Dredging Co., Civ. No. 10-3245, 2011 WL 2559678, at *10 (D.N.J. June 27, 2011) (collecting cases).

Accordingly, courts construe Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).  However, Rule 26 does not permit the parties to "'go fishing'" and, in fact, "'the trial court retains discretion to determine that a discovery request is too broad and oppressive.'"  Schneck v. IBM, Civ. No. 92-4370, 1993 WL 765638, *2 (D.N.J. July 27, 1993) (quoting Marshall v. Westinghouse, 576 F.2d 588, 591 (5th

Cir. 1978)).

In this case, Respondent's contention that at least some of the discovery sought is relevant to the underlying action is well taken. For example, for Respondent to establish a meritorious cause of action under the TCPA, it will need to prove that US Coachways transmitted its advertisements, or caused those advertisements to be transmitted, using an "automatic telephone dialing system" to call a number that has been assigned to a cell service. 47 U.S.C. §§ 227(a)(1) & (b)(1)(A)(iii). Therefore, the manner by which Petitioner transmits the advertisements on behalf of US Coachways is clearly relevant. Respondent points out that only Gold Mobile has that information, and Gold Mobile does not disagree.

Some degree of information about other individuals to whom Gold Mobile transmitted advertisements on behalf of US Coachways also may be relevant. To succeed in its class-certification application under Rule 23, Respondent will need to establish:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). See Cannon v. Cherry Hill Toyota Inc., 184 F.R.D. 540, 543 (D.N.J. 1999). These factors are "prerequisites for maintaining any class action in terms of the numerousness of the class making joinder of the members impracticable, the existence of common questions to the class, and the desired qualifications of the representative parties." Fed. R. Civ. P. 23, Advisory Committee Notes, 1966.

Therefore, it is reasonable to conclude that Respondent will be entitled to at least some discovery regarding the number of individuals to whom Gold Mobile sent text-message advertisements on behalf of US Coachways. That information will likely be critical to

Respondent's ability to establish numerosity.  Similarly, Respondent may well be entitled to the messages that Petitioner sent on behalf of US Coachways, insofar as both the manner in which those texts were transmitted and the substance of those messages is likely relevant to the issues of commonality and typicality.

Although Request No. 1 includes legitimately discoverable items, it is far too broad.  The subpoena's use of the term "data" is extraordinarily open-ended and can fairly be construed to encompass significantly more information than the items discussed above.  As Petitioner observes, "data" could include "internal communications among [its] employees" that, at best, is of marginal relevance.  Petitioner's Reply Brf., D.E. 7, at 2.  Indeed, Request No. 1 could be read to demand even the most picayune information regarding system maintenance, as long as that system transmitted US Coachways' advertisements.  Moreover, Respondent's opposition to the motion to quash does little to clarify or narrow the scope of "data."

Similarly, the subpoena has no temporal limitation.  The two putative classes are limited to four years, consistent with the statute of limitations for the TCPA.  28 U.S.C. § 1658; Bais Yaakov of Spring Valley v. Alloy, Inc., 936 F. Supp. 2d 272, 281 (S.D.N.Y. 2013) (noting that TCPA did not contain statute of limitations, and applying general four-year limitations period under § 1658, rather than state statute of limitations, to TCPA claim).  However, the subpoena is completely silent on timeframe.

Moreover, that Respondent is entitled to discovery on the elements of class certification does not necessarily entitle him, at this stage, to the specific names and contact information for each individual whom Gold Mobile contacted on US Coachway's behalf.[1]  Respondent avers that the court in the underlying litigation already addressed this issue because it did not bifurcate class and merits discovery.  Respondent's Brf., D.E. 4, at 8.  But that argument elides the point.  The

---

[1] In certain contexts, Title 47 restricts the release of specific identifying information for customers. See, e.g., 47 U.S.C. § 551(c) (governing disclosure of personally identifiable information for cable subscribers).  Neither party has raised a similar limitation under Title 47 here.

fact that Respondent is entitled to discovery necessary to move for class certification, and on the merits of its claims, does not necessarily mean it is entitled, at this point, to personally identifiable information for all individuals who might have received an advertisement from US Coachways, before the certification has even been granted.  It may be that for purposes of numerosity, for example, it is sufficient for Plaintiff to know the total number of individuals who received, within the four-year limitations period, text advertisements from US Coachways similar to Plaintiff's.  Similarly, for purposes of commonality and typicality, Respondent fails to explain why the texts themselves and the manner in which they were delivered, would be insufficient.[2]   However, the subpoena makes no such distinction; nor does Respondent offer one in opposing the motion to quash.

---

[2]  Respondent's contention that an "Attorneys Eyes Only" designation is inappropriate here because the confidentiality order in the Northern District of Illinois litigation contains no such provision overlooks the fact that Petitioner is not a party to that case or that confidentiality order.   Moreover, there is no suggestion that Petitioner had any opportunity to be heard on the substance of the confidentiality order before it was entered.

Respondent's argument that an "Attorneys Eyes Only" designation is unnecessary presupposes that such a designation is appropriate only where the party providing the discovery and the party receiving the discovery are direct competitors.   That position is not well taken.   Federal Rule of Civil Procedure 26(c)(1)(G) authorizes the court to "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]"   Neither Rule 26(c)(1)(G), nor caselaw within the Third Circuit, nor Local Civil Rule 5.3, limits an "Attorneys Eyes Only" designation to proprietary information shared between direct competitors.   See, e.g., Carchietta v. Russo, Civ. No. 11-7587, 2014 WL 1789459, *7 (D.N.J. May 6, 2014) (ordering production of police internal affairs files in civil rights litigation under "Attorneys Eyes Only" designation); Grant Heilman Photography, Inc. v. Pearson Educ., Inc., Civ. No. 11-4649, 2012 WL 1956787, *1-2 (E.D. Pa. May 31, 2012) (production of defendant's print quality report for "Attorneys Eyes Only"); Graham v. Carino, Civ. No. 09-4501, 2010 WL 2483294, *3-4 (D.N.J. June 4, 2010) (ordering "Attorneys Eyes Only" production of municipal defendants' financial records to counsel for plaintiff claiming excessive force and seeking punitive damages).

Here, the Allen Declaration is not especially specific regarding the harm it would suffer if its proprietary information became public, or the measures it has taken to protect that information.   See, e.g., Allen Decl. at ¶ 8.   However, it sets forth a sufficient factual basis to allow for the possibility that any material reflecting the manner in which Petitioner transmitted US Coachways' advertisements should be produced for "Attorneys Eyes Only."   Accordingly, in meeting and conferring regarding the manner in which Petitioner will produce responsive material in response to Request No.1, the parties shall revisit the use of a discovery confidentiality order that includes an "Attorneys Eyes Only" provision.   If the parties still cannot reach an agreement, they shall resubmit that issue to the Court in the form of a joint letter, on or before July 15, 2015.   Petitioner will include a new declaration setting forth in greater detail the nature of the potential harm and its efforts to keep the information confidential.

Accordingly, the Court grants in part and denies in part the Petitioner's motion to quash [D.E. 2]. The Court denies the motion insofar as Request No. 1 seeks information, for the four years before the filing of the complaint, about: (1) the total number of individuals who received text advertisements from US Coachways similar to Plaintiff's; (2) the substances of those text messages sent on behalf of US Coachways; and (3) the manner by which Petitioner delivered those text messages on behalf of US Coachways. The Court grants the motion to quash to the extent Request No. 1 seeks additional discovery. However, to the extent Respondent seeks any additional material from Petitioner, it shall meet and confer with Petitioner in an attempt to resolve the issue without additional court intervention. If the parties cannot resolve the issue through the meet and confer, they shall present the issue to the Court in the form of a joint discovery letter, on or before July 15, 2015.

        */s Michael A. Hammer*  
        **UNITED STATES MAGISTRATE JUDGE**